# WHEELING.

## W. H. TOMPKINS v. THE KANAWHA BOARD.

Submitted January 23, 1880—Decided December 16, 1882.

(*SNYDER, JUDGE, Absent.)

1. The Kanawha Board being authorized by law to charge tolls on the Kanawha river is bound to keep the river in navigable condition and is liable for damages sustained by reason of its negligence in failing so to do.   (p. 229.)

2. The Kanawha Board is not an insurer of the goods shipped on said river and is only liable for losses, which may occur by reason of its negligence in failing to keep the river in navigable condition.   (p. 230.)

3. Although an instruction propounds the law correctly, and the court modifies it, the judgment will not be reversed for that reason, unless the modification was to the prejudice of the exceptor.   (p. 230.)

4. Remote negligence of the plaintiff will not prevent his recovery for an injury immediately caused by the negligence of the defendant.  The negligence of the plaintiff, which defeats his recovery, must be a proximate cause of the injury.   (p. 230.)

5. The question of negligence is for the jury upon all the evidence before them and upon the duties imposed by law upon the defendant; and any want of proper diligence in performing such duties is negligence.   (p. 231.)

6. Where the law imposed upon a company, authorized to collect tolls upon a river, the duty of keeping the chutes free from ob-

*Case submitted before Judge S. took his seat on the bench.

structions, proof that a log was in a chute in such river, on which the loss occurred, *prima facie* shows negligence in the defendant-company and casts the burden on it to show, that it used due diligence to discover and remove such obstruction. (p. 231.)

7. The general rule is, that where personal property is being shipped to a certain place for sale, and a loss occurs, the measure of damages is the difference between the price, at which the property was bought, and its market value at the place where, and at the time, when it should have been delivered. But where the owner and shipper of the property had contracted to sell it in the place where it was to be delivered, the price, which was agreed to be given for it, is the best evidence of its value; and the measure of damages in that case is the difference between the cost of the property and such price.   (p. 232.)

8. It is not an error for which a judgment will be reversed, to exclude evidence from the jury, unless such exclusion was to the prejudice of the exceptor.   (p. 232.)

9. There being conflicting evidence, held on well established principles, that the judgment will not be reversed, verdict set aside and new trial granted.   (p. 233.)

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Kanawha, rendered on the 18th day of June, 1879, in an action in said court then pending, wherein W. H. Tompkins was plaintiff and The Kanawha Board was defendant, allowed upon the petition of said Board.

Hon. Joseph Smith, judge of the seventh judical circuit, rendered the judgment complained of.

The facts in the case are stated in the opinion of the Court.

*William A. Quarrier* for plaintiff in error:

1. This case having been properly dismissed at the rules, it was error in the circuit court to reinstate it and set aside the dismission after the 15th day of the term that next succeeded the dismission.   Code, section 7, section 60, section 46 of chapter 125.   *Enders* v. *Birch*, 15 Gratt. 64.

2. The Kanawha Board is a peculiarly West Virginia creation.   It inherits none of the duties or liabilities of the old James River and Kanawha Company.   Its powers, duties

and liabilities are only those prescribed in the Acts of its organization. Acts of West Virginia, 1869, page 75.

3. The Kanawha Board is a branch or department of the State government. It cannot be sued by any individual in the State courts at all, and particularly not in an action *ex-delicto* to recover remote and consequential damages. *Sayer* v. *Northwestern Turnpike Co.* 10 Leigh, 454; *Dunnington* v. *same*, 6 Gratt. 160.

4. The court erred in refusing defendant's instructions as asked, and in amending them, and giving the instructions asked by the plaintiff.

5. The court erred in rejecting evidence of the institution of the suit of the *Plaintiff* v. *Steamer Lookout*.

*C. Hedrick* for plaintiff in error cites the following authorities: 13 Gratt. 549, 550, 551; *Id.* 556, 557; 6 Gratt. 170, 171; 10 Leigh 454.

*S. A. Miller* for defendant in error cites the following authorities: Session Acts of Va. (1857–58) 93; Acts Va. (1862) at Wheeling, 53; Acts Va (1863) at Wheeling, 64; Acts W. Va. (1869) 75; 10 Leigh 452; 6 Gratt. 170, 171, 172; 13 Gratt. 541, 551; Acts Va. (1859–60) 115; Acts Va. (1862) at Wheeling, 56, 151; Acts W. Va. (1869) 76; 16 Gratt. 433; Code ch. 35; Sherm. & Redf. Neg. 208, §§ 178, 179 and note; L. R. 93; H. & N. 164; H. & N. 308; 16 N. Y. 161, and note; 50 N. Y. 236; Hill, New Trials, p. 339, § 5 *et seq.; Id.* p. 340 § 10.

JOHNSON, PRESIDENT, announced the opinion of the Court:

In October, 1877, the plaintiff brought his action of trespass on the case against the defendant in the circuit court of Kanawha county to recover damages for the loss of a barge-load of salt. The declaration is as follows:

"Wm. H. Tompkins complains of the Kanawha Board, a corporation duly authorized by laws of the State of West Virginia, and the laws of the State of Virginia, and existing in the State of West Virginia, of a plea

of trespass on the case, and the said plaintiff says that, whereas, previous to the year 1863, and up to 20th of June of said year, a public improvement extending through the then State of Virginia, and known as the James River and Kanawha Company, was vested by and with and under the laws of the State of Virginia of the complete control, ownership and franchises of the corporation known as the James River and Kanawha Company aforesaid, by which the full control of the Kanawha river for the collection of tolls thereon, with the obligation to keep up all the channels, chutes and currents, as applied to the navigation of said Kanawha river as adopted by the said James River and Kanawha Company, and to keep the same free from obstruction in said chutes or channels so as to preserve, keep up and maintain in good order a good navigation for all the citizens of the said State of West Virginia and of the United States, of the said Kanawha river.

"And the said plaintiff further says that after the formation and creation of the State of West Virginia, to-wit, on the 20th June, 1863, and by the laws of the State of West Virginia thereafter enacted and passed by said State, the defendant, the said Kanawha Board, was created, incorporated and constituted, and to said defendant was transferred all the rights heretofore held, exercised and owned by said James River and Kanawha Company, with and including the right to collect and enforce the payment of certain tolls and charges fixed by law for the navigation of said river and the transportation of freight by boats and other craft upon and on the waters of said Kanawha river, and which right the said defendant has hitherto, before and at the time of the grievance herein complained of, and still is, enforcing and has enforced; and upon it, the said defendant, was imposed all the liabilities, duties and obligations heretofore resting and imposed upon the said James River and Kanawha Company, by which the said defendant undertook and promised and agreed and upon which was imposed by law the duty to keep all the chutes, channels and currents of said river free from obstructions, &c., as might impair the navigation of said Kanawha river. And the said plaintiff says that heretofore, to-wit: on the 11th day of November, 1872, at the county aforesaid, the

said plaintiff shipped on a certain barge called the Ben J. May, to be towed by the steamer Lookout one thousand five hundred barrels of salt, of great value, to-wit, of the value of two thousand five hundred dollars, said salt to be shipped on said barge and towed to the port of Cincinnati, in Ohio, on the Ohio river, and that said salt was received in good order, and the said barge and steamer Lookout were each of them seaworthy and in good condition, but the said plaintiff avers that in passing through the chute known as thirteen-mile chute or shoals in the Kanawha river, at a point between the mouth of the Kanawha river and Loup creek shoals thereon the said barge was sunk, and the same and its cargo wholly lost.  And the plaintiff avers, that said barge and said fifteen hundred barrels was lost, by the negligence of the defendant in this suit; that it negligently and carelessly permitted the said chute to be so obstructed by logs, drift wood, &c., &c., concealed from ordinary observation of navigators, and especially those navigating the steamer Lookout, and barge aforesaid, with its cargo, aforesaid, as to cause the barge, aforesaid, with its cargo aforesaid, to be wholly lost and destroyed, to the great injury and loss of the plaintiff.  Therefore the plaintiff sues for the damage of five thousand dollars."

The defendant appeared and demurred to the declaration, in which the plaintiff joined; and the said demurrer was overruled by the court, and the defendant pleaded not guilty.

On the 16th day of June, 1879, the case was tried by a jury, and a verdict was rendered for the plaintiff for one thousand nine hundred and eighty-seven dollars and fifty-nine cents damages, which verdict the defendant moved the court to set aside, which motion the court overruled and entered judgment on the verdict.  During the trial the defendant presented their several bills of exceptions, which were signed by the court.  The *first*, certified the evidence and was to the refusal of the court to set aside the verdict and grant a new trial; the *second* was to the giving and refusing of instructions; and the *third* was to the action of the court in excluding certain evidence.

To the judgment the defendant obtained a writ of error and *supersedeas* without bond.  The plaintiff after giving notice to the defendant appeared in this court and moved to

dismiss the writ of error and *supersedeas*, unless bond was given, and the defendant, the plaintiff in error, resisted the motion on the ground, that the action would not lie against it, because all the property which it owned, belonged to the State, and the board was but the agent of the State, and the action was in effect a suit against the State. This court upon a hearing decided, that the action would lie, and ordered, that the writ of error and *supersedeas* be dismissed, unless a proper bond was given within a specified time. (*Tompkins* v. *Kanawha Board*, 19 W. Va. 257). The bond was given; and now the case must be decided upon its merits.

The first error assigned is the overruling the demurrer to the declaration. The case of *James River & Kanawha Co.* v. *Early* 13 Gratt. 541, was very similar to this in many respects. There the suit was trespass on the case to recover the value of a boat and its cargo of salt, which had been lost by striking a snag in the Kanawha river. The court held in that case, that the said company being authorized by law to charge tolls on the Kanawha river not exceeding those allowed to be charged by its predecessor the James River Company, is bound to keep the river in the same navigable condition, in which the James River Company was required to keep it, and is liable for any damages sustained by its failure so to keep it. But it was further held, that the James River and Kanawha Company was only required to improve the Kanawha river in the mode suggested by the report of the principal engineer of the State made in January, 1820. This did not contemplate a continued line of improvement, but that specified work should be done at specified places. And for damages occurring in consequence of obstructions at other places the James River and Kanawha Company, the successors of the James River Company, was not responsible. And as the loss in that case occurred at a place, that the company was not charged to keep in order, it was held, that the company was not liable therefor. There can be no doubt, that the Kanawha Board, were charged with the duty of keeping the Kanawha river free from obstructions at the thirteen mile chute, where the loss in this case occurred, which is between the mouth of the river and Loup creek shoals. Since the decision of the case of *James River and*

*Kanawha Company* v. *Early, supra* in July 1856, the Acts of February 15, 1858, and March 23, 1860, were passed, which do provide for a continuous improvement from the mouth of the river to Loup creek shoals, and the Act of March 3, 1869, fixes the rate of tolls from Charleston to the mouth of the river. The declaration it seems to me states a good cause of action, and is in proper form. The demurrer thereto was properly overruled.

The defendant asked the court to give the following instruction to the jury: "The Kanawha Board are not insurers of the freight shipped on the Kanawha river. In this suit they cannot be made liable, unless the jury are satisfied, that they were guilty of carelessness and negligence in allowing the log to remain an unreasonable time in the thirteen-mile chute, upon which the barge carrying the plaintiff's salt was sunk." The court refused to give the instruction, as asked, but modified it by adding the following: "Or that by due diligence and care on the part of themselves or their agent they could have discovered and removed the same." The modification of the instruction states the law correctly; and while it is not perceived, that it makes any material change in it, the modification certainly did not prejudice the plaintiff in error.

The defendant also asked the court to give the following instruction to the jury: "If the jury believe from the evidence, that the loss to the plaintiff occurred in material part by the carelessness and want of skill of those having charge of the steamer "Lookout" and barge, which carried plaintiff's salt, the plaintiff cannot recover in this action." This instruction the court also refused to give, as asked, but modified it as follows and then gave it: "But that such carelessness or want of skill on the part of those having charge of the steamer 'Lookout' and barge must have been to such an extent, as to have contributed to the loss, which ordinary diligence might have avoided." It would have been error to have given this instruction without modification. Remote negligence of the plaintiff will not prevent his recovering for an injury immediately caused by the negligence of the defendant. The negligence of the plaintiff, which will operate to defeat his recovering, must be a proximate cause of the

injury. (*Blaine* v. *C. & O. R. R. Co.*, 9 W. Va. 253; *Sheff* v. *Huntington*, 16 W. Va. 307; *Washington* v. *B. & O. R. R. Co.*, 17 W. Va. 190. The modification was proper.

The defendant also asked the court to give the following instruction to the jury: "The burden of proof in this suit is on the plaintiff to show, that there was negligence and carelessness on the part of the defendant, and unless he so proves, the jury must find for the defendant." The court refused to give the instruction, as asked, but modified it by adding the following and then gave it: "The question of negligence or carelessness is one for the consideration and decision of the jury upon all the evidence before them and upon the duties imposed upon the defendant by law; and any want of diligence in not performing such duty is negligence and carelessness on their part." While the instruction as asked laid down the law correctly, yet it might have misled the jury as to what was meant by negligence and carelessness, and the words added, we think, were proper, as they informed the jury, what would under the circumstances of this case constitute negligence and carelessness. If the instruction had not been modified, the jury might have thought, that before the defendant could be held liable, it was necessary, that it should have been notified, that the log was in the chute, and that with such knowledge it neglected to remove it; whereas it was the duty of the defendant, which was charging tolls on said river, to ever be on the alert to see, that the channel was kept free from obstructions.

At the instance of the plaintiff the court gave the following instruction, to which the defendant objected: "The court instructs the jury, that, if they believe from the evidence, that thirteen-mile chute was obstructed by a log lying therein, by reason of which the barge was sunk, and plaintiffs' salt was lost, then upon proof of such obstruction the burden of proof is on the defendant to show, that it used due diligence to ascertain and remove said obstruction before said loss." This instruction is correct. The law charged the defendant with the duty of keeping said chute free from obstructions, and when the plaintiff proved, that the chute was obstructed by a log, on which the barge was sunk and

plaintiffs' cargo was lost, the burden was then cast on defendant to show, that it had used due diligence to discover and remove the said obstruction.

At the plaintiff's instance, the court also gave the jury the following instruction, to which the defendant objected: "The court further instructs the jury, that if they believe from the evidence, that the plaintiff had sold the salt, the loss of which is in controversy, at a stipulated contract price then, that price should be the measure of damages so far as the value of said salt may be concerned." The general rule is, that where personal property is being shipped to a certain place for sale, and a loss occurs, the measure of damages is the difference between the price at which the property was bought, and its market value at the place of and at the time when it should have been delivered. *Boyd* v. *Gunnison*, 14 W. Va. 1. This rule is established to ascertain what the party had in fact lost. But where he has actually contracted to sell the property in the place where it is to be delivered at a specified price, that price at which it was so contracted to be sold is the best evidence of its value, and of the loss which its owner had sustained. We think the instruction was correct.

One of the bills of exceptions shows, that on the trial the defendant was permitted, without objection, to introduce evidence to prove, that the plaintiff, immediately after his loss, had sued out in the United States court for the district of West Virginia, a libel in his own name against the steamer Lookout, her tackle, apparel and furniture, for the loss of the same salt which had been sunk in the thirteen-mile chute and, that said case had been decided against him, and in favor of the steamer Lookout, and, that after the evidence had been closed and the case had been argued, the plaintiff moved to strike out all said evidence and the court instructed the jury to disregard said evidence.

Did the court err in this? If the bill of exceptions had shown, that as soon as the loss occurred, the plaintiff had libeled the steamer Lookout, and had stopped there and it had not appeared, that the libel had been decided against him, this would have been admissable as tending to show, that at that time the plaintiff attributed the loss of his salt to the negligence of the steamer Lookout, which was towing his barge,

and not to the defendant, and it would have been error to have excluded it from the jury. But when it was shown by the defendant, that the libel suit had been decided against the plaintiff, it was also shown, that the plaintiff was mistaken in supposing, that the loss was occasioned by the negligence of the steamer Lookout, and it was not prejudiced by the exclusion of the testimony from the jury.

Did the court err in refusing to set aside the verdict and grant a new trial? The question of negligence was for the jury, and the evidence on that point was conflicting, and upon well established principles, this Court cannot interfere with the verdict under such circumstances as we are not able to say, that by excluding all the parol evidence of the exceptor, in conflict with that of the plaintiff, the verdict was not warranted by the evidence. The judgment of the circuit court is affirmed with costs and damages according to law.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT AFFIRMED.